## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ROANOKE DIVISION

| | | |
|---|---|---|
| **MICHAEL HAYS FARRAR,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 7:19CV00626 |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| **WILLIAM JACOB WORRELL, ET AL.,** | ) | JUDGE JAMES P. JONES |
| | ) | |
| Defendants. | ) | |

*Michael Hays Farrar, Pro Se Plaintiff; Jim H. Guynn, Jr., and Julian F. Harf, GUYNN, WADDELL, CARROLL & LOCKABY, P.C., Salem, Virginia, for Defendants.*

The plaintiff Michael Hays Farrar, proceeding pro se, filed this civil rights action under 42 U.S.C. § 1983 against five current or former deputies with the Carroll County, Virginia, Sheriff's Office: William Jacob Worrell, William Lyons II, Bradley Hoffman, Trevor Carico, and Jason Helton. Farrar contends that the defendants used, or permitted the use of, excessive force against him during his arrest and that they denied him medical care thereafter. After review of the record, I conclude that the defendants' Motion for Summary Judgment must be granted in part and denied in part.

## I. BACKGROUND.

The following summary of the evidence is derived from the verified Amended Complaint, the defendants' declarations, and exhibits submitted by the parties. For

purposes of summary judgment,[1] all reasonable inferences are drawn in Farrar's favor.

At the time of the events in question, Farrar was living in a trailer in Hillsville, Virginia, which is in Carroll County.  He was on probation for a conviction in Pulaski County Circuit Court for failing to return rental property.  On November 15, 2018, the Pulaski County Sheriff's Office issued a teletype requesting assistance in serving Farrar with an arrest warrant for an alleged probation violation.  The teletype indicated that Farrar was dangerous and possibly armed.  Each of the defendants responded to the call for assistance.

The defendants arrived at Farrar's trailer at approximately 9:30 p.m.  Worrell and Hoffman went to the front door of the trailer, while Lyons, Helton, and Carico went to the back door.  Farrar's girlfriend, Sheryl Cecil, opened the front door after Hoffman and Worrell knocked on it.  The defendants told Cecil they were there to serve an arrest warrant on Farrar.  Cecil directed them to a back bedroom on the left side of the trailer, which had an attached bathroom.

At this point, the parties' accounts diverge.  According to the verified Amended Complaint, Farrar was in the bathroom when he saw Hoffman coming into

---

[1]  The defendants offer in support of their Motion for Summary Judgment, the following declarations with other attached records: Mem. Supp. Mot. Summ. J. Ex. 1 (Hoffman Decl.), ECF No. 56-1; Ex. 2 (Worrell Decl.), ECF No. 56-2; Ex. 3 (Helton Decl.), ECF No. 56-3; Ex. 4 (Carico Decl.), ECF No. 56-4; Ex. 5 (Lyons Decl.), ECF No. 56-5; and Ex. 6 (Bowman Decl.), ECF No. 56-6.

the room.[2]  Farrar turned around, pulled down his pants, sat down on the toilet, and began removing a disposable catheter.  Farrar alleges that Hoffman then grabbed him by the head and punched him in the face and back, while dragging him across the floor.  Farrar was naked from the waist down with his pants around his ankles, and he "landed face down with [Hoffman] on [his] back hitting [him] in [his] face and head."  Am. Compl. 3, ECF No. 8.  When Farrar attempted to block the punches by turning his head, Hoffman allegedly hit him on the other side of his head and face, as well as his ears and neck.

Farrar further alleges that at some point during this "initial assault," Lyons entered the room, pinned Farrar's legs, and began hitting him on his "bare butt and back."  *Id.*  When Lyons asked Hoffman why Farrar was bleeding, Hoffman falsely stated that Farrar had hit a nail.  Farrar asserts that Hoffman then "landed another round of knees and punches to [his] head, face, ears, and wherever else he could hit," while Lyons struck his back and legs.  *Id.* at 4.  Farrar avers that he was already

---

[2]  In the Amended Complaint, Farrar alleged that Lyons and another officer he identified as "First Officer" entered the trailer through the front door and that First Officer initially entered the bedroom, followed by Lyons.  Am. Compl. 3, ECF No. 8.  Farrar later submitted additional evidence and information (ECF Nos. 29, 37, 38, 46, and 47) that the court construed and granted as amendments to his pleading to identify the First Officer as Hoffman, and to clarify that Hoffman was accompanied by Worrell, while Lyons and the other officers entered later to assist.  Farrar also submitted a statement from Cecil, signed under penalty of perjury, ECF No. 72-1.  Although the magistrate judge denied his motion seeking submission of this statement, I have considered it as part of Farrar's case.

handcuffed at this point and that he was "completely hobbled by Lyons standing on [his] pants." *Id.*

Farrar alleges that while he was "still face down, handcuffed, pants down, bleeding and getting random punches or kicks," screaming in pain, the other defendants and Cecil entered the room. *Id.* While one defendant removed Cecil from the bedroom and another began searching drawers, Farrar "was hit in [his] butt with a stick, rod, baton, or maglight [sic]" and he "started crying rape as loud as [he] could." *Id.* In response, the defendants laughed at him, while he was "crying lying naked and bleeding on the floor." *Id.* At no point, according to Farrar, did the defendants identify themselves or explain why they were there or what they were doing.

Farrar asserts that Hoffman and Lyons eventually stood him up and pulled up his pants. Once Farrar was standing, Hoffman allegedly said, "I will kill you next time." *Id.* Hoffman then started to cover Farrar's head with a bag or fabric. By this point, Farrar "was completely loosing [sic] it." *Id.* at 5. He begged the defendants not to cover his head because of his mental issues. Additionally, Farrar was having difficulty seeing because his prescription glasses had been "broken off [his] face," he was "bleeding into both eyes," and an "eye was swelling shut." *Id.*

At this point, an officer escorted Farrar to Lt. Lyons's patrol car and placed him inside it. Lyons drove Farrar to the Carroll County Sheriff's Office and took

him before a magistrate.   The magistrate issued warrants charging Farrar with possession of a controlled substance with intent to distribute and obstruction of justice by threats or force.   Even though Farrar was "still bleeding" and "slumped over," no one in the Carroll County Sheriff's Office examined his injuries.   *Id.*

After the warrants were issued at approximately 11:15 p.m., officers from the New River Valley Regional Jail transported Farrar to the jail.   Upon seeing Farrar, a nurse informed the officers that Farrar needed to be taken to the hospital.   *Id.*

Farrar was examined in the emergency department of Carilion New River Valley Medical Center shortly after midnight.   Amend. Compl. 12, ECF No. 37-5. Hospital records indicate that Farrar reported being involved in a physical altercation with police officers and complained of facial wounds, right ear pain, and right rib pain.   Physical examination notes describe Farrar as having "[c]rusted blood over entirety of face" and "2 cm lacerations to the R and L lateral eyebrows," each of which required three sutures.   *Id.* at 13.   A CT scan of Farrar's head revealed no mass, hemorrhage, or acute stroke, and a CT scan of his cervical spine revealed no acute abnormalities.   The examining physician expressed his final impression as follows:

1.     Examination for medicolegal reason Acute

2.     Alleged assault Acute

3.     Facial laceration, initial encounter Acute

4. Closed head injury, initial encounter Acute

5. Neck pain Acute

*Id.* at 19.

Farrar also underwent a forensic examination at the hospital, during which he provided an account of his encounter with the deputies.  The forensic nurse examiner ("FNE") photographed Farrar's injuries and reported her physical findings.  In addition to describing the dried blood and lacerations observed by the examining physician, the FNE noted skin discoloration, abrasions, and bruising on Farrar's left forehead, left elbow, left thumb, right earlobe, right chest, right buttock, and right hip.  *Id.* at 32.  Farrar was discharged from the hospital at 4:25 a.m. on November 16, 2018, and returned to the jail.

On September 16, 2019, Farrar appeared in the Carroll County Circuit Court and entered pleas of guilty to the offenses for which he was arrested on November 15, 2018: possession of a Schedule II controlled substance with intent to distribute and obstruction of justice.  The court sentenced Farrar to five years imprisonment, with three years and ten months suspended, for the drug offense, and to twelve months, all suspended, on the obstruction offense.

The defendants' account of what transpired in the trailer is quite different than Farrar's version.  The deputies contend that Farrar refused to comply with repeated commands to show his hands as he sat on the toilet with one of his hands out of sight

between his legs.  Consequently, "[Hoffman] believed Farrar was either reaching for a weapon or flushing drugs," and for that reason, "[he] pulled [Farrar] to the floor and told him he was under arrest."  Hoffman Decl. ¶ 4, ECF No. 56-1.  At that point, according to the defendants, "Farrar was flailing his body, kicking his legs, and banging his head against the ground," and all five defendants attempted to subdue him.  *Id.* at ¶ 5.  Farrar actively resisted the officers' efforts to subdue him and ignored their commands for him to put his hands behind his back.  Each of the defendants feared Farrar might have a weapon.  "To urge Farrar to give up his hands, [Hoffman admittedly] issued hand strikes to his right side."  *Id.*  However, Hoffman denies striking Farrar in the face or head, and Lyons denies striking Farrar at all.  According to the defendants, Farrar began bleeding from his head after he banged it against the floor and wall, and he continued banging his head on the floor after being handcuffed, screaming, "Cheryl they're raping me."  *Id.*

At some point during the interactions with Hoffman, Farrar spit at the deputy and said that he had Hepatitis C or HIV (Hoffman does not recall which).  As a result, after Farrar was handcuffed, Hoffman retrieved a "spit mask" from his patrol car and placed it on Farrar.  *Id.* at ¶ 8.  The mask allowed Farrar to breathe, see, and have normal range of motion.[3]

---

[3] Farrar denies that Hoffman placed a spit mask on him that night.  Resp. 11, ECF No. 58 ("[A spit mask] was never on me just trying to cover my head like a hostage & when I told them about my Mental Condition & Meds that stopped.").

After Farrar was handcuffed and he calmed down, Lyons searched his person and found marijuana in his pocket.  Farrar's girlfriend consented to a search of the trailer.  Inside a nightstand in the back bedroom, the deputies found a black bag containing five plastic baggies filled with white crystals, a bag with four orange pills, and several empty baggies.  They also found a set of digital scales.  The girlfriend told the deputies that the items belonged to Farrar.  Field testing revealed that the white crystals were positive for methamphetamine, and the orange pills were identified as Schedule III drugs.

Farrar commenced this action under 42 U.S.C. § 1983 in early September 2019.  In mid-October 2019, he filed a verified Amended Complaint that he later amended.  He sued Lyons, Hoffman, Worrell, Carico, and Helton, the officers listed on the police report.  Liberally construed, Farrar's pleadings, ECF Nos. 1, 8, 29, 37, 38, 46, and 47, assert the following claims: (1) Hoffman and Lyons used excessive force in violation of the Fourth Amendment; (2) Hoffman and Lyons committed assault and battery under Virginia law; (3) Hoffman and Lyons committed intentional infliction of emotional distress under Virginia law when they tried to "hood" Farrar; (4) all five deputies acted with deliberate indifference to his serious medical needs in violation of the Fourteenth Amendment; (5) all five deputies violated the Americans with Disabilities Act ("ADA") "by not treating [Farrar] medically"; (6) all five deputies failed to protect Farrar from acts of excessive force

by others and/or were deliberately indifferent to Farrar's condition after such uses of force, in violation of the Fourteenth Amendment and the Virginia Constitution; and (7) Hoffman and Lyons were deliberately indifferent under the Fourteenth Amendment and intentionally inflicted emotional distress in violation of Virginia law when they failed to provide Farrar access to medical care at the Carroll County Sheriff's Office. Amend. Compl. 1, 2, ECF No. 37. As relief, Farrar seeks monetary damages.[4]

As discussed, the defendants have moved for summary judgment. Farrar has responded to their motion, making it ripe for a decision.

## II. Discussion.

### A. Standards of Review.

The Federal Rules of Civil Procedure provide that a court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if 'a reasonable jury could return a verdict for the

---

[4] As relief, Farrar also requested "protection from retaliation from said Deputies & friends," which I construe as a request for injunctive relief. Amend. Compl., ECF 37-2. Farrar notified the court in May 2020 that he is no longer incarcerated. Accordingly, I conclude that his request for injunctive relief against these defendants is moot. *See Rendelman v. Rouse*, 569 F.3d 182, 186 (4th Cir. 2009) ("[A]s a general rule, a prisoner's transfer or release from a particular prison moots his claims for injunctive . . . relief with respect to his incarceration there.").

nonmoving party.'" *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013).[5] "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Henry v. Purnell*, 652 F.3d 524, 548 (4th Cir. 2011)). In considering a motion for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party. *Id.* at 312-13. To withstand a summary judgment motion, the nonmoving party must produce sufficient evidence from which a reasonable jury could return a verdict in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The defendants have filed declarations and other documentation in support of their motion. Accordingly, to avoid summary judgment, Farrar must present sufficient evidence that could carry the burden of proof of his claims at trial. His submissions must "set forth specific facts showing that there is a genuine [factual] issue for trial" on which the jury could find in his favor. *Id.* "[I]t is well established that a verified complaint is the equivalent of an opposing affidavit for summary judgment purposes, when the allegations contained therein are based on personal knowledge." *Goodman v. Diggs*, 986 F.3d 493, 498 (4th Cir. 2021).[6]

---

[5] I have omitted internal quotation marks, citations, and alterations throughout unless otherwise noted.

[6] "A complaint is 'verified' if it is 'signed, sworn, and submitted under penalty of perjury.'" *Goodman*, 986 F.3d at 495 n.2. Farrar's Amended Complaint satisfies these verification requirements.

B.  Claims under Section 1983.

Section 1983 permits an aggrieved party to file a civil action against a person for actions taken under color of state law that violated his constitutional rights. *Cooper v. Sheehan*, 735 F.3d 153, 158 (4th Cir. 2013).  The defendants do not contest that they acted under the color of state law during the events on which Farrar alleges his § 1983 claims of excessive force, bystander liability, and denial of medical care.

### 1. *Excessive Force on Arrest.*

An officer's use of force on arrest is weighed under the Fourth Amendment and does not violate the Constitution if it is objectively reasonable in light of the facts and circumstances.  *Graham v. Connor*, 490 U.S. 386, 388 (1989).  This analysis requires "a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* at 396.  Three factors guide the court's objective reasonableness inquiry: (1) "the severity of the crime"; (2) "whether the suspect pose[d] an immediate threat to the safety of the officers or others"; and (3) whether the suspect was actively resisting arrest or attempting to flee.  *Id.*  Importantly, the court must judge the defendant's actions "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.*  The court's reasonableness assessment must make "allowance for the fact that police officers are often forced to make split-second judgments — in circumstances that are tense,

-11-

uncertain, and rapidly evolving — about the amount of force that is necessary in a particular situation." *Id.* at 397.

Hoffman and Lyons contend that there is no genuine issue of material fact on which a reasonable jury could find that they used excessive force against Farrar in violation of the Fourth Amendment. I disagree.

Viewing the evidence in the light most favorable to Farrar, the use of force occurred after the defendants entered Farrar's residence to serve an arrest warrant for a probation violation. According to the Amended Complaint, Hoffman grabbed Farrar from the toilet by the head, punched him in the face and back, and dragged him across the bedroom floor with his pants around his ankles. Farrar states that even after he was pinned face-down on the floor and placed in handcuffs, Hoffman continued to punch him in the head, face, and ears, while Lyons repeatedly struck Farrar's back, butt, and legs. Farrar suffered injuries to his face and head during the incident, including lacerations that required sutures. I conclude that under the Fourth Amendment standard, a reasonable jury could find that Hoffman and Lyons used excessive force.

The defendants' declarations paint a sharply different picture of what transpired in the residence, suggesting that they only used as much force as necessary to ensure safety of all participants when apprehending a suspect described to them as dangerous and possibly armed who was actively resisting the officers' orders and

efforts to arrest him.  At summary judgment stage of the proceedings, however,

Farrar's verified Amended Complaint "carries the same weight" as the defendants'

declarations and has "the same force and effect."  *El Bey v. Roop*, 530 F.3d 407, 414

(6th Cir. 2008); *see also Goodman*, 986 F.3d at 498.  Based on Farrar's sworn

allegations, I find that a reasonable jury could be persuaded that Hoffman and Lyons

used excessive force both before and after handcuffing Farrar.  *See Young v. Prince*

*George's Cnty.*, 355 F.3d 751, 758 (4th Cir. 2004) (holding that the district court

erred in granting summary judgment on the plaintiff's Fourth Amendment excessive

force claim where the plaintiff was struck in the head and back while lying face-

down on the ground in handcuffs), *abrogated on other grounds by Wilkins v. Gaddy*,

599 U.S. 34 (2010).  Accordingly, I must deny summary judgment for Hoffman and

Lyons on the merits of the excessive force claim.

### 2.  *Heck v. Humphrey Bar of § 1983 Claim.*

The defendants also argue that the excessive force claims implicate the validity

of Farrar's conviction for obstruction of justice and is therefore barred by *Heck v.*

*Humphrey,* 512 U.S. 477 (1994).  In *Heck*, the Supreme Court held that

> when a state prisoner seeks damages in a § 1983 suit, the district court
> must consider whether a judgment in favor of the plaintiff would
> necessarily imply the invalidity of his conviction or sentence; if it
> would, the complaint must be dismissed unless the plaintiff can
> demonstrate that the conviction or sentence has already been
> invalidated.  But if the district court determines that the plaintiff's
> action, even if successful, will not demonstrate the invalidity of any

> outstanding criminal judgment against the plaintiff, the action should
> be allowed to proceed.

*Id.* at 487.  "The *Heck* analysis requires a close factual examination of the underlying

conviction."  *Riddick v. Lott*, 202 F. App'x 615, 616 (4th Cir. 2006) (unpublished).

A § 1983 claim is not barred under *Heck* unless "it is clear from the record that its

successful prosecution would necessarily imply that the plaintiff's earlier conviction

was invalid."  *Id.*

In this case, the record establishes that Farrar pleaded guilty to a charge of

obstruction of justice in violation of Virginia Code § 18.2-460.  However, it is not

clear from the record that success on Farrar's § 1983 excessive force claim would

necessarily call into question the validity of his conviction for obstruction.  The

defendants have presented no evidence regarding the factual basis for Farrar's guilty

plea.  Without such evidence, the court "cannot determine whether his claim of

police brutality would necessarily imply invalidity of his earlier conviction."  *Id.*;

*see also id.* at 617 (recognizing that even a conviction for assaulting an officer while

resisting arrest "may coexist with a finding that the officer's alleged attack was

unprovoked and occurred independently of" plaintiff's resistance); *Reese v. Cnty. of*

*Sacramento*, 888 F.3d 1030, 1046 (9th Cir. 2018) (holding that without the specific

factual basis for plaintiff's prior conviction, the court could not determine if

plaintiff's excessive force claim would call into question the validity of the

conviction); *Bush v. Strain*, 513 F.3d 492, 498 (5th Cir. 2008) (explaining that "a

§ 1983 claim would not necessarily imply the invalidity of a resisting arrest conviction, and therefore would not be barred by *Heck*, if the factual basis for the conviction is temporally and conceptually distinct from the excessive force claim"). Accordingly, I conclude from the record that none of the defendants is entitled to summary judgment under *Heck*.

### 3. Bystander Liability.

In the Amended Complaint as amended or supplemented by later submissions, Farrar contends that all five deputes were present in the bedroom to witness or also to participate in the efforts by Hoffman and Lyons to subdue and restrain him, but did nothing to help him.[7]  I construe these allegations as asserting claims of bystander liability under § 1983 against all five deputies for failing to prevent some of the alleged uses of excessive force by other defendants.

> The concept of bystander liability is premised on a law officer's duty to uphold the law and protect the public from illegal acts, regardless of who commits them. . . . Therefore, if a bystanding officer (1) is confronted with a fellow officer's illegal act, (2) possesses the power to prevent it, and (3) chooses not to act, he may be deemed an accomplice and [be] treated accordingly.

---

[7]  The defendants argue that when Farrar amended his pleading after their Motion to Dismiss, he abandoned his claim of bystander liability.  The docket reflects, however, that Farrar did not label these later submissions as a Second Amended Complaint and that the court granted them as amendments to the existing Amended Complaint.  Thus, the defendants' abandonment argument lacks merit.

*Randall v. Prince George's Cnty.,* 302 F.3d 188, 203 (4th Cir. 2002) (citing *O'Neill v. Krzeminski*, 839 F.2d 9, 11-12 (2d Cir. 1988) (observing that officer who stands by and does not seek to assist victim could be "tacit collaborator"); *Tarashuk v. Orangeburg Cnty.*, No. 5:19-CV-02495-JMC, 2022 WL 969749, at *8 (D.S.C. Mar. 30, 2022) (applying *Randall* bystander liability standard to claim by pretrial detainee).

Liberally construed, Farrar's allegations describe a scene where at least two deputies are hitting him, a sick man in his fifties who is face down on the floor, screaming in pain, crying rape, and bleeding, and they continue doing so even after he is in handcuffs.  The deputies' own declarations indicate that they each participated in some way in a joint attempt to physically subdue and restrain Farrar.  The deputies all state that they were so focused on their individual portion of that task that they could not observe uses of force by other deputies.  On this record, I find genuine disputes of material fact on which Farrar could persuade a jury that one or more of the deputies knew that another deputy was using excessive force, had a reasonable opportunity to intervene to protect Farrar, and failed to do so.  I will deny summary judgment as to the bystander liability claim as to all five defendants.

### 4. Deliberate Indifference to Serious Medical Needs.

Claims that state officials deprived a pretrial detainee of medical care are addressed under the Fourteenth Amendment, using the familiar deliberate

indifference standard. *Shover v. Chestnut*, 798 F. App'x 760, 761–62 (4th Cir. 2020) (unpublished) (citing *Patten v. Nichols*, 274 F.3d 829, 834 (4th Cir. 2001). To prevail with such a claim, the detainee plaintiff must first demonstrate that the injury suffered is both apparent and serious. *Id.* (citing *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999)). A medical condition is sufficiently serious when it is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008).

The plaintiff must also state facts showing that each defendant exhibited deliberate indifference. *Grayson,* 195 F.3d at 695. "Deliberate indifference is a very high standard — a showing of mere negligence will not meet it." *Id.* First, the plaintiff must show the defendant's actual knowledge of the risk of harm that the injury or medical condition posed to the plaintiff; and second, the detainee must show that the defendant "recognized that his actions were insufficient to mitigate the risk of harm to the [detainee] arising from his medical needs." *Iko*, 535 F.3d at 241. Moreover, "an inadvertent failure to provide adequate medical care" does not satisfy the deliberate indifference standard, and thus, mere negligence in diagnosing or providing treatment for a medical condition is insufficient. *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976). Rather, for liability under § 1983 for a constitutional violation, the defendant must have responded inappropriately to a "serious" medical condition or acted intentionally to delay or deny the prisoner access to adequate

medical care. *Id.* at 104–05.  A constitutional claim and potential liability under §
1983 arise only when the plaintiff establishes that medical care or a denial of medical
care was "so grossly incompetent, inadequate, or excessive as to shock the
conscience or to be intolerable to fundamental fairness." *Moon v. Mueller*, No.
CIV.A. 1:12-1225-TMC, 2013 WL 2352441, at *1 (D.S.C. May 29, 2013) (quoting
*Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990)).

Farrar has submitted copies of two photographs of himself, taken early on the
morning of November 16, 2018, when officials booked him into the jail, about three
and a half hours after his encounter with the defendants.  Amend. Compl. 1–2, ECF
No. 38-1.  Farrar claims that at this time, he was still bleeding from a cut above his
right eye.  He argues that given his injuries, the defendants should have known after
the altercation that he needed immediate medical care.  Instead, the defendants took
him before the magistrate to be charged and let him wait, unattended, for jail officials
to take custody of him at the Sheriff's Office.

The defendants state in their declarations that they saw only some cuts and
light bleeding on Farrar's face that night.  They also declare their understanding that
according to procedure, Farrar would soon be transported to the jail, where officials
would ensure that he received an assessment by medical professionals and
appropriate medical care.  Only Lyons transported Farrar from his trailer to the
Sheriff's Office, where jail officials would retrieve him.  None of the other deputies

saw or could have obtained medical care for Farrar after he left with Lyons.  All of the deputies, including Lyons, have stated their belief that Farrar's injuries were not serious enough to require medical attention before he reached the jail.

While the photographs are grim and Farrar alleges suffering more than de minimis injuries, I must agree that neither the photos nor the allegations and medical records depict injuries likely to cause death or permanent disability if not immediately addressed.  Moreover, as the defendants expected, within hours of the altercation, jail officials ensured that Farrar received professional assessment and treatment of his injuries at the local hospital.  He underwent diagnostic imaging tests and received sutures for lacerations as the medical staff deemed necessary.  On this record, I find no material disputed fact on which a reasonable jury could find that any of the defendants were deliberately indifferent to a serious medical need for more prompt or different medical care than Farrar received that night.  I conclude that the defendants are entitled to summary judgment as a matter of law as to this claim and will grant that portion of their motion.

*5.  Americans with Disabilities Act.*

Farrar states: "All Deputies violation [sic] of Americans with Disabilities Act by not treating me medically."  Amend. Compl. 2, ECF No. 37.  This claim fails. "[T]he ADA cannot be used to assert a claim of inadequate medical care." *Baxley v. Jividen*, 508 F. Supp. 3d 28, 62 (S.D.W. Va. 2020).  "Although the Fourth Circuit

has not addressed this issue in a published opinion, unpublished cases from this circuit, as well as published and unpublished cases from other circuits, indicate that a prisoner may not state a claim under the ADA for a lack of medical treatment." *Mondowney v. Balt. Cnty. Det. Ctr.*, No. ELH-17-1538, 2019 WL 323900 at *21 (D. Md. July 18, 2019) (citing other cases).  I will grant the defendants' motion as to Farrar's ADA claim.[8]

### 6. Qualified Immunity.

The defendants argue that as to the federal claims, they should be granted qualified immunity against Farrar's claims for damages.  I cannot agree.

The doctrine of qualified immunity shields government officials from civil damages liability "so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (per curiam) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)).  To prevail under this defense, the defendants must "show either that no constitutional violation occurred or that the right violated was not

---

[8]  I also note that Farrar fails to support a discrimination claim under the ADA. "[T]o state a cause of action under Title II [of the ADA], an individual must plausibly allege (1) that he has a disability or has been regarded as having a disability; (2) that he is otherwise qualified to receive the benefits provided by a public entity; and (3) that he was denied those benefits or was otherwise discriminated against on the basis of his disability." *Fauconier v. Clarke*, 966 F.3d 265, 276 (4th Cir. 2020).  The defendants deny knowing that Farrar was disabled for purposes of the ADA, and Farrar does not describe any action or inaction by any defendant taken because of Farrar's mental or medical condition.

clearly established at the time it was violated." *Hunter v. Town of Mocksville*, 789 F.3d 389, 396 (4th Cir. 2015); *see also Meyers v. Baltimore Cnty.*, 713 F.3d 723, 731 (4th Cir. 2013) ("The burden of proof and persuasion with respect to a defense of qualified immunity rests on the official asserting that defense."). "At summary judgment, in the qualified immunity context as in others, courts must view the evidence in the light most favorable to the party opposing summary judgment." *Brown v. Elliott*, 876 F.3d 637, 641 (4th Cir. 2017).

Here, I have already determined that the record, when viewed in the light most favorable to Farrar, contains sufficient evidence from which a reasonable jury could find that Hoffman and Lyons used excessive force against Farrar and that all defendants failed to protect him from such force by others. The defendants argue that I should grant them qualified immunity on the second prong — "whether it would be clear to a reasonable officer that the conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001). Their arguments rest, however, on the accounts set forth in their own declarations, rather than considering the facts in the light most favorable to Farrar, as I must at this stage of the case. They do not attempt to prove with legal precedent that under clearly established law, the deputies' conduct as Farrar describes it could reasonably have been considered lawful. I conclude that the disputed versions of events in this case bar the entry of summary judgment on the ground of qualified immunity. *Buonocore v. Harris*, 65

F.3d 347, 359-60 (4th Cir. 1995) ("If a plaintiff has alleged a clearly established right, summary judgment on qualified immunity grounds is improper as long as there remains any material factual dispute regarding the actual conduct of the defendants.").

### C.  State Law Claims.

Farrar asserts four claims under state law: assault and battery by Hoffman and Lyons; intentional infliction of emotional distress by these defendants when Hoffman tried to place a sort of hood on Farrar; cruel and unusual punishment by all defendants for leaving him naked and panicking on the floor, in violation of the Virginia Constitution; and intentional infliction of emotional distress by Hoffman and Lyons by leaving him without medical attention at the sheriff's office for hours. The defendants do not argue for summary judgment as to the first of these claims — alleged assault and battery by Hoffman and Lyons.  Thus, these claims will go forward to trial.  As to the other state law claims, however, I conclude that the defendants are entitled to summary judgment.

The tort recognized as the intentional infliction of emotional distress ("IIED") is also called the "tort of outrage." *Russo v. White*, 400 S.E.2d 160, 162 (Va. 1991). The term outrageous does not define a prohibited "act or series of acts; rather, it represents an evaluation of behavior," and accordingly, the law does not favor this tort.  *Id.*  Under Virginia law, an IIED claim arising from a "non-tactile tort may be

compensated if the plaintiff alleges, and proves by clear and convincing evidence, that: the wrongdoer's conduct is intentional or reckless; the conduct is outrageous and intolerable; the alleged wrongful conduct and emotional distress are causally connected; and, the distress is severe." *Id.*

Initially, the court must "determine whether the facts alleged will support a finding of both outrageousness and severe emotional distress," the second and fourth prongs. *Id.* Criminal or malicious intent alone is insufficient for an IIED claim, which requires a finding that "the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* Similarly, for an IIED claim, the plaintiff must show that "the emotional distress [was] extreme" and that "the distress inflicted [was] so severe that no reasonable person could be expected to endure it." *Id.* at 163. I am satisfied that Farrar has not made the necessary factual showings to state an IIED claim against any defendant for the acts he describes.

First, Farrar denies that anyone placed a spit mask on him to protect the officers from Hepatitis C or HIV, as Hoffman states.[9]  Resp. 5-6, ECF No. 58.

---

[9] I also agree with the defendants that if Hoffman did place a spit mask on Farrar simply because he had just announced that he had a contagious, serious disease, such conduct could not be considered outrageous or intolerable in civilized society so as to support an IIED claim.

Rather, Farrar alleges that after the officers stood him up, Hoffman threatened to kill him the "next time," took a shirt or similar item from the laundry on the floor and tried to cover Farrar's head with it.  Am. Compl. 4–5, ECF No. 8.  Farrar alleges that he begged the deputies to stop because of his mental issues, and Hoffman "quit trying to bag [Farrar's] head." *Id*. 5.  Hoffman did not have any further contact with Farrar.

I find nothing here that must be regarded as "atrocious, and utterly intolerable in a civilized community." *Russo*, 400 S.E.2d at 162.  Indeed, Farrar does not allege that Lyons participated in any way in the alleged, attempted hooding.  I also find no evidence that Farrar experienced emotional distress so extreme that no one could be expected to bear it.  Indeed, Hoffman stopped his actions when Farrar simply complained that he was growing distressed.  I conclude that Hoffman and Lyons are entitled to summary judgment as a matter of law as to this claim.

Second, Farrar has not shown facts stating an IIED claim regarding the delays in medical treatment for which he blames the defendants.  Common sense dictates that it was not outrageous or unacceptable in civilized society for the deputies to determine that Farrar did not need immediate medical care for his cuts and bruises, when they knew that jail officials would soon ensure him access to medical care at the jail or a nearby hospital.  Furthermore, Farrar presents no evidence of emotional injury, let alone a severe emotional injury, resulting from the delay in medical

treatment. *Id.* I conclude that the defendants are entitled to summary judgment as a matter of law as to this state law claim.

Finally, I must grant the defendants' motion as to Farrar's separate claims of cruel and unusual punishment in violation of the Virginia Constitution.

> For a constitutional provision to be operative, it must be self-executing or have associated legislation that allows for a cause of action. A provision is generally not self-executing if it merely indicates principles, without laying down rules by means of which those principles may be given force of law. First, Va. Const. Art. I § 9 states only the principle that cruel and unusual punishment ought not to be inflicted, without any attendant rules; therefore, § 9 is not self-executing.

*Delk v. Moran*, No. 7:16CV00554, 2019 WL 1370880, at *4 (W.D. Va. Mar. 26, 2019). Thus, in relying on § 9, a constitutional provision that is not self-executing, Farrar has stated no actionable civil claim for damages under state law against the defendants under this section. I will grant the defendants' motion as to these claims.

### III. CONCLUSION.

In accordance with the foregoing, it is **ORDERED** as follows:

1.     The defendants' Motion for Summary Judgment, ECF No. 55, is GRANTED IN PART AND DENIED IN PART. The motion is granted as to Claim 3, alleging intentional infliction of emotional distress; Claim 4, alleging deliberate indifference to serious medical needs; Claim 5, alleging ADA violations; Claim 6, to the extent that it alleges a violation of the Virginia Constitution; and Claim 7, alleging deliberate indifference to medical needs and intentional infliction of

emotional distress.  The motion is denied as to Claim 1, alleging use of excessive force by defendants Hoffman and Lyons in violation of the Fourth Amendment; Claim 2, alleging assault and battery by Hoffman and Lyons; and Claim 6, alleging bystander liability claims against all five defendants.

2.     The defendants are DIRECTED to answer these remaining claims within 30 days from the date of entry of this Order; and

3.     The Clerk is DIRECTED to set this matter for a jury trial at the United States Courthouse in Abingdon, Virginia.

ENTER:  May 9, 2022

/s/  JAMES P. JONES
Senior United States District Judge